KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL BRAVO-ROMERO,<br><br>Defendant. | Criminal Case No. 08CR2411-BTM<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) TO COMPEL SPECIFIC DISCOVERY**<br>**(2) TO PRESERVE EVIDENCE**<br>**(3) TO SUPPRESS STATEMENTS**<br>**(4) FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>Date: August 29, 2008<br>Time: 1:30 p.m.<br>Court: The Hon. Barry T. Moskowitz |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline Han, and hereby files its Response and Opposition to Defendant's Motions to Compel Specific Discovery, to Preserve Evidence, to Suppress Defendant’s Statement, and For Leave to File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

/ /

/ /

/ /

# I

## STATEMENT OF FACTS

### A. Statement of the Case

On July 23, 2008, a federal grand jury handed up a one-count Indictment charging Defendant with Attempted Entry After Deportation in violation of Title 8, United States Code, Section 1326(a) and (b). The indictment also alleges that Defendant was removed from the United States subsequent to October 5, 2007. Defendant entered a not guilty plea before this Court on July 24, 2008.

### B. Statement of Facts

#### 1. Defendant's Arrest

On June 29, 2008 at approximately 8:55 pm, United States Border Patrol Agent (BP) Jose Carrillo was performing line watch duties in an area approximately three miles west of the San Ysidro Port of Entry and approximately 300 yards north of the United States/Mexico international border. Thereafter, he was informed by a scope operator that he had seen one person running north from the secondary fence. BP Agent Carrillo followed the directions from the scope operator as to the direction in which the person had fled, and observed three people attempting t conceal themselves in brush. Agent Carrillo identified himself as a Border Patrol agent, and conducted an immigration inspection. The defendant, and the two other people, all stated that they were Mexican citizens in the United States illegally. Thereafter, the defendant and the other two people were placed under arrest and transported to the Imperial Beach station for processing.

At the Imperial Beach station, the defendant was fingerprinted and his identity, criminal, and immigration histories were confirmed.

#### 2. Defendant's Statements

At approximately 12:18 am, the defendant was advised that his consular rights no longer applied. At approximately 12:19 am, the defendant was advised of his Miranda rights in

the Spanish language The defendant stated that he understood his rights, and agree to waive those rights. The defendant stated that he is Mexican citizen and national who was in the United States illegally. He also stated that he had no immigration documents that would allow him to stay or work in the United States illegally.

**C. <u>Defendant's Criminal History</u>**

On December 27, 1983, the defendant was convicted of Driving Under the Influence in Pasco County, Oregon, and was sentenced to 30 days in jail and a fine. On March 18, 1988, the defendant was convicted of Attempted Murder with a Firearm in Marion County, Oregon, and was sentenced to 20 years prison. On October 5, 2007, the defendant was convicted of False Check in Los Angeles County, and received a sentence of 16 months prison.

## II

## MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE

The Government provided Defendant with 208 pages of discovery including the complaint and statement of facts, reports from the apprehending agents., the defendant's prior conviction documents, as well as a DVD containing the defendant's advisal of rights and his statements..

With respect to Defendant's discovery motions, the Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Id.</u> at 489; <u>see also</u> <u>Cooper v. Calderon</u>, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. <u>See</u> <u>Illinois v. Fisher</u>, 540 U.S. 544 (2004) (<u>per curiam</u>); <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988); <u>United States v. Rivera-Relle</u>, 322 F.3d 670 (9th Cir. 2003); <u>Downs v. Hoyt</u>, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(1) Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant. In addition, the United States objects to the defendant's request for a certified transcript of the defendant's post-arrest statements. Rule 16 does not require the United States to do so, and there is no reason that has been specified for this request. As such, the request should be denied.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).

However, the Government objects to providing Defendant with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or

any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest reports, notes, dispatch tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or Brady. The United States is presently unaware of any dispatch tapes relating to the Defendant's arrest in this case. In addition, the United States has already discovered a copy of the Report of Investigation for the defendant's case.

**(3) Reports of Scientific Tests or Examinations**

The United States is not aware of any scientific tests or examinations at this time but, if any scientific tests or examinations were conducted or are conducted in the future, the United States will provide Defendant with any reports of any such tests or examinations in accordance with Rule 16(a)(1)(F).

**(4) Brady Material**

The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10

(1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380, 389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does Brady require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976). 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for

this information is premature.

**(5) Information That May Result in a Lower Sentence Under the Guidelines** – The Government has provided and will continue to provide the defendants with all Brady material that may result in mitigation of the defendants' sentences. Nevertheless, the Government is not required to provide information bearing on the defendants' sentences until after the defendants' convictions or guilty pleas and prior to their sentencing dates. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the the defendants at a time when the disclosure remains in value").

**(6) Defendant's Prior Record**

The United States has already provided Defendant with a copy of any criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

**(7) Proposed 404(b) and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at or before the time the United States' trial memorandum is filed. The United States reserves the right to introduce as prior act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

**(8) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)© in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(9) Request for Preservation of Evidence**

After issuance of a an order from the Court, the United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence. The United States has complied and will continue to comply with Rule 16(a)(1)© in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United

States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

**(10) Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant's defense, or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(11) Evidence of Bias or Motive To Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(12) Impeachment Evidence**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

**(13) Evidence of Criminal Investigation of Any Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(14) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling. The United States recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection or ability to communicate. The Government objects to providing any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(15) Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will

not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(16) Names of Witnesses Favorable to the Defendant**

The Government willl comply with its obligations under Brady and its progeny. At the present time, the Government is not aware of any witnesses who have made an arguably favorable statement concerning the defendant.

**(17) Statements Relevant to the Defense**

The United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted). For these reasons, the motion should be denied.

**(18) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act

material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(19) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(20) Personnel Records of Government Officers Involved in the Arrest** – The Government objects to the defendants' requests that the Government reveal all citizen complaints, and internal affair inquiries into the inspectors, officers, and special agents who were involved in this case – regardless of whether the complaints or inquiries are baseless or material and regardless of whether the Government intends to call inspectors, officers, and special agents to testify. As previously noted, the Government will comply with Henthorn and disclose to the defendants all material incriminating information regarding the testifying Government inspectors, officers, and special agents.

**(21) Henthorn Material**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**III**

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Defendant moves this Court for an order suppressing any statements because they were

allegedly made as a result of an invalid waiver of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). As explained further below, the United States does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's motion, the United States will prove that Defendant's statements while he was in the field were voluntary, Defendant was not subject to custodial interrogation, and the statements are, therefore, admissible. As to the statements that the defendant made while he was in custody, they were made after he was properly advised of his Miranda rights and he agreed to waive those rights. Moreover, any evidence derived from Defendant's statements should not be suppressed because the evidence was properly obtained without any due process violation.

**1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

This Court can and should deny Defendant's motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); United States v. Moran- Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g). Moreover, Defendant's brief allegations fail to establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf.

United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). Defendant's motion to suppress statements should be denied.

**2. Defendant Was Not In Custody When He Made Field Admissions**

When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1) custody, and (2) interrogation. Id. at 477-78. Whether a person is in custody is measured by an objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." United States v. Booth, 669 F.3d 1231, 1235 (9th Cir. 1981); see also United States v. Beraun-Perez, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1) the language used to summon the individual; 2) the extent to which the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

The Supreme Court held that in the "general interest of effective crime prevention and detection...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). This authorized investigatory detention or stop falls short of custody when a Border Patrol agent does not have enough information to execute an arrest, and must investigate further through brief, routine questioning about citizenship and immigration status. See United States v. Brignoni-Ponce, 422 U.S. 873, 878-88 (1975); United States v. Galindo-Gallegos, 244 F.3d 728, 731-32 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).

The case of Florida v. Royer, 460 U.S. 491 (1983), is instructive. In Royer, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug

courier profile." As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his airline ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name. Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

In deciding the case, the Supreme Court noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

Id. at 497-98 (citations omitted).

Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to the

initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test. The officer approached the petitioner in an open field and asked him several questions to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers." Id. at 1311.

Detaining a person for routine border questioning is not custodial. United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's denial of a defendant's motion to suppress his field statements). In Galindo-Gallegos, patrol agents apprehended the defendant and others running near the Mexican border. Once they had the 15 or 20 people seated, an agent asked them what country they were from and whether they had a legal right to be in the United States. Id. The defendant said that he was from Mexico and had no such right. Id. The order Patrol agents did not advise the group of their Miranda rights prior to this questioning. Id. After the defendant admitted that he was an alien illegally in the United States, he and the others were handcuffed and put into one of the vehicles. Id. The Ninth Circuit affirmed the district court's decision not to suppress the defendant's field statements. Id.

This case is analogous to Royer, Benitez-Mendez, and Galindo-Gallegos. Here, a Border Patrol agents responded to information that a person had fled from the secondary fence and followed the direction of flight of that person. When he arrived, the agent found the defendant and two others. The agent identified himself as a Border Patrol agent. The agent then conducted a field interview of the defendant as to his citizenship and right to be in the United States. Defendant responded that he was a citizen of Mexico with no legal right to be in the United States. See Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible).

Defendant's field admissions were made during a brief investigatory stop. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law enforcement may make a brief investigatory stop and ask questions about citizenship and

immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that persons subjected to brief investigatory detentions are not entitled to Miranda warnings). Defendant answered those questions voluntarily. The record is devoid of any suggestion that the agents physically restrained Defendant or restricted his liberty in any meaningful way. Further, the fact that officers were armed or displayed badges does not turn a consensual encounter into a custodial situation. See United States v. Drayton, 536 U.S. 194, 204-205 (2002). During this questioning, Defendant was not placed in handcuffs or searched. There is simply nothing to suggest that Defendant was in custody during his field interview and his statements to officers in the field are admissible at trial. For all of the foregoing reasons, the Court should deny Defendant's motion to suppress all statements.

**3. Defendant's Post Miranda Statement were Voluntary**

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence shows that the statement was made after an advisement of Miranda rights, and that the statement was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, the court should analyze the totality of the circumstances surrounding the interrogation. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc)) (valid waiver because the 17-year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to

notify parents); (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002)) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters); (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession (see Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)) (valid waiver despite 15-hour delay between Miranda warnings and interview).

In this case, Defendant's post-arrest confessions should not be suppressed because they were preceded by a knowing, voluntary, and intelligent Miranda waiver. Agents advised Defendant of his Miranda rights in Spanish. Defendant knowingly waived his Miranda rights and agreed to answer questions without the presence of an attorney. Defendant is familiar with the criminal justice system as a result of his prior arrests and convictions. He verbally stated that he understood his rights and was willing to be interviewed without an attorney present and he signed a waiver of rights expressing her decision to speak with agents. Defendant's post-Miranda interview immediately followed his waiver of rights. In addition, this entire exchange was videotaped. There is no allegation or evidence of any physical or psychological coercion by any Government agents. Based on the totality of the circumstances, Defendant's statements were the product of a knowing, intelligent, voluntary waiver of his Miranda rights and therefore should not be suppressed. For these reasons, the defendant's motion should be denied.

## IV

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

## V

## GOVERNMENT MOTIONS

### A. Government Motion For Fingerprint Exemplars

The Government requests that Defendant be ordered to make himself available for fingerprint exemplars at a time and place convenient to the Government's fingerprint expert. See United States v. Kloepper, 725 F. Supp. 638, 640 (D. Mass. 1989) (the District Court has "inherent authority" to order a defendant to provide handwriting exemplars, fingerprints, and palmprints). Because the fingerprint exemplars are sought for the sole purpose of proving Defendant's identity, rather for than investigatory purposes, the Fourth Amendment is not implicated. See United States v. Garcia-Beltran, 389 F.3d 864, 866-68 (9th Cir. 2004) (citing United States v. Parga-Rosas, 238 F.3d 1209, 1215 (9th Cir. 2001)). Furthermore, an order requiring Defendant to provide fingerprint exemplars does not infringe on Defendant's Fifth Amendment rights. See Schmerber v. California, 384 U.S. 757, 770-71 (1966) (the Fifth Amendment privilege "offers no protection against compulsion to submit to fingerprinting"); Williams v. Schario, 93 F.3d 527, 529 (8th Cir. 1996) (the taking of fingerprints in the absence of Miranda warnings did not constitute testimonial incrimination as proscribed by the Fifth Amendment).

### B. Government's Motion to Compel Reciprocal Discovery

#### 1. All Evidence That Defendant Intends to Introduce in His Case-In-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom

Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**2. Reciprocal Jencks – Statements By Defense Witnesses**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**VI**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motions.

DATED: August 26, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Caroline P. Han*
CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. MIGUEL BRAVO-ROMERO, Defendant. | Criminal Case No. 08CR2411-BTM<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL DISCOVERY, SUPPRESS STATEMENTS, AND FOR LEAVE TO FILE FURTHER MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Thomas Sims**
*Attorney for defendant*

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 26, 2008

/s/ *Caroline P. Han*
CAROLINE P. HAN